## THE WILLIE.[1]

### THE LUDGATE HILL.

### CAHILL v. THE WILLIE and another.

(*District Court, S. D. New York.* November 19, 1886.)

COLLISION—CANAL-BOAT IN TOW—STEAMER'S PROPELLER—UNUSUAL CONSTRUCTION OF PROPELLER—UNJUSTIFIABLE POSITION FOR CANAL-BOAT—LIABILITY OF TUG.

The tug W., with libelant's boat in tow, attempted to enter a slip, the opening to which, owing to vessels along-side the piers, was only some 60 feet wide. In going in, libelant's boat was swung under the counter of the steamer L. H., which was lying along the wharf, struck her propeller blade, and sunk. The steam-ship had double screw propellers, which are unusual in the port of New York, and project nearer the line of the vessel's side than ordinary single propellers. *Held*, on the evidence, that libelant's boat was swung under the steamer's stern to an improper and dangerous degree, even in reference to single screw propellers; that the tug was therefore solely in fault.

In Admiralty.

*Carpenter & Mosher,* for libelant.
*Biddle & Ward,* for the Willie.
*Hill, Wing & Shoudy* and *C. C. Burlingham,* for the Ludgate Hill.

BROWN, J. On the ninth day of May, 1885, between 10 and 11 A. M., as the steam-ship Ludgate Hill was lying along the upper side of the slip between Piers 42 and 43 North river, with her stern about 30 feet inside the end of the pier, the tug Willie, with the libelant's canal-boat lashed on her port side, came into the slip, for the purpose of landing her tow. On the opposite side of the slip were two

barges moored abreast, leaving a clear space between the barges and the steam-ship of about 60 feet. The Willie had previously landed another tow at Pier 36, and then came up the river into the slack-water near the piers, the tide being ebb, and undertook to land the tow through the narrow space above stated. In doing so she first headed towards the quarter of the steam-ship, and backed her engines when about a dozen feet from it. The boats continued under headway, and the swing of the bows brought the libelant's boat against one of the blades of the steam-ship's propeller, which was broken off by the blow. The propeller blade stove a hole through the boat, so that the latter sank in a few minutes.

The steamer had double screw propellers, each 15 feet in diameter. Measurements show that the end of the blade, when perpendicular, as she was then loaded, would be about three feet under the water-line, and that the blade, when horizontal, would project within about seven or eight inches of the line of the vessel's side.

The tug claims that the steam-ship was in fault because double screw propellers are altogether unusual in this port, because the tug had no notice that the steamer had double screws, because such screws project at least four or five feet further towards the side of the ship than the blade of the largest single propeller, and because they were entitled to notice from the steamer of the danger from her novel construction; or else that the steamer should have furnished guards against collision, as is sometimes done.

The evidence shows that the blow received by the canal-boat was not upwards of four feet below the water line. That being so, and the top of the propeller blade, when perpendicular, being three feet below the water level, it follows that the position of the blade, at the time of the accident, must have been so near upright as to be about four and one-half feet inside of the line of the vessel. This confirms what some of the other witnesses testify to, viz., that the tow went considerably under the steamer's counter. As the propeller blade was broken, the blow must have been severe; so that it is clear that the tow would have swung considerably further inward if it had not encountered the propeller's blade. The position of the tow at the time of collision, considerably inside of the line of the steamer's side, and under her counters, very nearly approached the position of the blades of a single propeller. I have no doubt, therefore, that the canal-boat was swung under the steamer's stern to an improper and dangerous degree, even in reference to single screw propellers. This was not made necessary or excusable by any of the circumstances, or by any necessities of the tug and the tow in entering the slip, and it was therefore at the risk of the tug. It was brought about, doubtless, by another and prior fault, viz., in coming up so near to the piers. After landing the other tow, the tug should have gone out into the river far enough to enable her to make a turn into the slip less sharp in landing the libelant's boat.

Considering that the tug had brought the canal-boat so far under the steamer's counter, and into a place where she had no business to be, I think it would be unjust to impose any part of the loss upon the steamer, notwithstanding the considerations that have been so ably urged. Had the collision occurred, as was first charged, outside of the line of the steamer's side, or even within a short distance only inside of that line, and where it was not unusual for tugs to go in the necessarily close navigation of the slips, the case would have been different. It seems reasonable to require that vessels of new designs, having concealed parts beneath the water dangerous to ordinary shipping, should give notice when practicable of their peculiarities, or have fenders to prevent injury to innocent persons having no suspicion of the concealed danger. *The Bellerophon*, 3 Asp. (N. S.) 58, 60, 62.

This steamer was, however, one of a line of three that had come into this same slip for at least six or seven months before this accident, and the tug had been accustomed to go to the French steamers on the opposite side of the slip very frequently during all this time. The pilot of the tug says he had no knowledge that any of the three steamers of the Hill line were double screw propellers. It seems almost incredible that notice of this fact should have escaped him. It is not in accordance with the usual knowledge that men derive in their daily business of what is about them. These steamers had upon each rail, in line above the propeller blades, a semi-circular sponson, two and a half feet in diameter, projecting beyond the rail, and designed to fend the propeller off from the lines of the wharf,—a conspicuous peculiarity not likely long to escape the attention of those frequenting the slip. But, without further comment upon this part of the case, I think, for the reason above suggested,—namely, because the place of the collision was so far under the counter as to be unjustifiable in reference even to any propeller,—that the tug must be held alone in fault. Had the tug kept within the line that ordinary prudence and ordinary practice require, no injury would have been done. The steamer was properly moored at her wharf. She did nothing to lead the tug beyond that line, and therefore cannot be held in fault. *The Granite State*, 3 Wall. 310.

The libelant is entitled to a decree against the Willie, with costs; and the libel should be dismissed, with costs, as against the Ludgate Hill.