## THE DAVE & MOSE.

## FAHEY v. MAYOR, ETC., OF CITY OF NEW YORK.

*(District Court, S. D. New York. January 29, 1892.)*

1. **WHARVES AND WHARFINGERS—DUTY TO DREDGE.**
   The city is liable for injury to boats occasioned by its failure to remove at reasonable intervals the accumulations from drains at public wharves to which boats are invited, and at which the city collects wharfage.
2. **SAME—DUTY OF BOAT AT WHARF—SOUNDINGS—INQUIRIES.**
   It is negligence in a boatman to tie up for the night at a dock on the Harlem river at 155th street without sounding, or inquiry as to the depth of water, or breasting his boat off.

In Admiralty. Suit by Michael Fahey against the mayor, etc., of New York city, to recover for loss of canal-boat sunk at respondent's wharf. Decree for libelant.

*Hyland & Zabriskie,* for libelant.

*William H. Clark,* Corp. Counsel, and *James M. Ward,* Assistant, for city.

BROWN, District Judge. On the 16th of September, 1891, the libelant's canal-boat Dave & Mose, loaded with 275 tons of coal, moored alongside the platform dock at 155th street and the Harlem river, to which she was consigned. Her bow was headed down river and projected 12 feet below the lower end of the dock, and her stern extended about the same distance above the upper end. Between 1 and 2 o'clock during the following night as the tide went down, the forward part of the boat caught on the bottom; and when the men on board were called between 1 and 2 A.M., she had a list to port, and with the help of others could not be shoved off. The bottom being sloping and the stern of the boat free, she got a twist; and the stern, careening to port, took in water so as gradually to pull her off until she sunk. The bottom was of silt or sand, with no stones. Adjacent to the dock the water at mean low tide varied from 6 feet near the upper end of the dock to 4 feet at and below the lower end, where a drain of the surface water from Seventh avenue brought in considerable quantities of silt and sand. Twenty feet out from the dock the depth of water at mean low tide was from 12 to 17 feet; 30 feet out, from 15 to 20 feet. The canal-boat was 17 feet wide. Similar boats have been accustomed to go to the dock for several years past. Only two cases of injury from grounding are shown by the evidence; and the proof is not clear whether those damages were at the dock or above. It was not uncommon for boats coming to the dock to catch temporarily, but they were easily shoved off without damage. The depths of water above stated are those ascertained by disk soundings, that is, to the top of the soft silt or sand. Soundings by the rod were about a foot or a foot and a half greater near the dock, and two or three feet greater further off.

The gradual filling in of the bottom around the lower end of the dock was known to the officers of the city. The last dredging was in February, 1889; the dredging next prior was in September, 1887,—17 months before. Two or three feet, the evidence shows, had collected between those two dredgings in 17 months. This accident was 19 months after the last dredging.

The libelant's boat had repeatedly been at the same wharf before with similar loads, and met with no difficulty. There is no evidence as to how she was managed on those occasions. The man in charge at this time had never been there before. He knew nothing of the depth of water; made no inquiries on arrival; made no soundings, and gave but small slack to his bow-line, but much slack to his stern-line; and he went to bed without breasting off or making any other provision for the safety of the boat during the night.

Upon the above facts I think both parties were in fault; the city, for not dredging again about the lower end of the dock after a lapse of 17 months, when, as previous experience had shown, new dredging became necessary, and the accumulations of sand there being known. The man in charge of the boat was negligent in tying up for the night at such a place as a dock on the Harlem river at 155th street without sounding, or inquiring as to the depth of water, or breasting off. Ordinary prudence and the habits of boatmen in such locations are to make soundings, or otherwise ascertain whether the boat can safely lie over low water before leaving her without attendance, or watch for the night.

This duty, however, does not relieve the city from the obligation to remove by dredging at reasonable intervals the accumulations from drains at public wharves where they are inviting boats and collecting wharfage. Decree for the libelant for one-half the amount of his damage, (*Christian* v. *Van Tassel*, 12 Fed. Rep. 884,) with order of reference to ascertain the amount.