PETERSON v. GREAT NECK DOCK CO.

(District Court, E. D. New York. June 3, 1896.)

WHARVES—MASTER'S NEGLIGENCE—ROCKS AT DOCK.

Where a canal boat was injured by getting upon rocks at a dock while discharging coal, *held*, that the dock owners were not liable, it appearing that the master had been warned of the presence of the rocks, and had also made a personal examination; that he knew his boat could only lie there at high tide, but the accident occurred from his assumption that the tide would rise to the same height as on the previous day, which it was prevented from doing by a change of wind.

Hyland & Zabriskie, for libelant.
C. & N. D. Lawton, for claimants.

BENEDICT, District Judge. This is an action brought by the owner of the canal boat May E. Coffey to recover of the owners of the steamboat dock at Great Neck for injuries done to libelant's boat, while engaged in discharging a cargo of coal at the dock, by getting upon some rocks that lay in the dock. The Great Neck dock is a single wharf, built out from a rocky shore, for the use of a steamboat which lands there daily. At the end of the wharf there is good water. On the south side, some 70 feet from the end of the dock, there is a derrick used for discharging coal from canal boats which occasionally discharge coal onto cars that come on the wharf under the derrick. At high tide there is plenty of water for loaded canal boats in the berth under the derrick. The method of using the dock for discharging coal is shown to be, to place the canal boat under this derrick on a rising tide; to haul the boat away when the tide falls, returning again at high water. Alongside of the south side of this wharf, stones which had fallen out from the crib extended out from the lower side of the wharf some five feet or more, and were under water at high tide. The libelant's boat came to the wharf on the 5th of September, 1895, for the purpose of discharging cargo. She at first made fast to the end of the wharf. The same evening she dropped away from the wharf, to the eastward, to allow the steamboat to make a landing at the end of the wharf, and hauled in again to the end of the wharf. The next morning she again dropped to eastward to allow the steamboat to make her landing, and at high water on the 5th she hauled in under the derrick, where part of her cargo was then discharged. In shifting her position as the tide fell, she got caught on the rocks along the westerly side of the wharf, but from there she came off the same night on the rising tide without injury. The next morning she hauled in under the derrick again on a rising tide, and resumed the discharge. At about 1 o'clock, when in the same berth under the derrick, she was winded around to discharge from the other end. She discharged till 3:30 p. m., and then, when the tide began to turn, she got on stones from which it was impossible to remove her, and by which she was considerably injured.

It is proved that the master was well informed as to the nature of the bottom at that berth. He says himself that he examined the bottom before he hauled in there the first time. He had been on the

rocks in that same berth on the 6th, without injury; and on the 7th, had he hauled his boat back before the tide fell, he would have received no injury. The reason the master gives for his being caught on the rocks the last day is that he looked at a mark on the wharf to which the tide rose the day before, and expected it to rise to the same height on the day of the injury. Owing to a change in the wind, the tide did not rise so high on the 7th as on the 6th, by about a foot; and, while he was expecting the tide to rise to this mark of the day before, it was in fact falling, and he was caught on the rocks before he knew it. I consider it proved by the evidence that the master knew that there were rocks under the bottom where he lay discharging under the derrick. He may not have known of the particular stones which afterwards penetrated the bottom of his boat, but he knew that there were stones there from which it was necessary to keep his boat off by hauling before low tide. The cause of the accident was his own negligence in assuming that the tide would rise as high on the 7th as it did on the 6th. He was not justified in so assuming, and his acting on this assumption, and failing to haul the boat before the tide fell, was the negligence which caused the damage. The master had a right to assume that the berth was clear of stones; but the proof is that he not only examined the bottom himself, but had been notified of the existence of stones there, and he had actually been on some of them the day before. Knowing this, he had no right to assume that the dock was clear. In fact, he did not act on any such assumption, for he knew the contrary. What he did assume was that the tide would rise as high on the 7th as it did on the 6th. This he had no right to assume. His duty was to watch the tide, and haul his boat in time to prevent the boat's catching on the stones he knew to be there. His failure to watch the tide, and to see that it was falling and that it had become necessary for him to move his boat, was negligence, and the negligence that caused the accident. The libel is dismissed, and with costs.