THE IMP.

(District Court, S. D. New York. June 16, 1915.)

MUNICIPAL CORPORATIONS ☞849—WHARVES—SUPERVISION BY CITY—NEGLIGENCE OF WHARFINGER—NOTICE GIVEN BY THIRD PERSON.

The city of New York held not liable for injury to other vessels from the capsizing of a sand barge lying in the inner end of a slip by reason of the shallowness of the water at low tide and the presence of stones on the bottom, where the master of the barge was duly notified of the danger at night by an employé of the consignee of the cargo, and advised not to move to the position until high tide in the morning, but disregarded the warning. One of the injured vessels also held in fault for moving in and making fast to the barge, although her master knew the danger, and entitled to recover only half damages from the barge.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1806; Dec. Dig. ☞849.]

In Admiralty. On petition by Louis J. Schussler, owner of the scow Imp, for limitation of liability, the City of New York was impleaded. On determination of liability for injury to the vessels Governor Hill and Clearfield. Decree against the Imp, and in favor of the City.

The Governor Hill and her master, McDermott, and the Clearfield, each filed a libel against the city of New York and against the barge Imp. The Imp limited its liability and has brought in the city. All proceedings came up for trial on the following state of facts:

The northwest corner of the East River slip formed by the bulkhead and Piers 60 and 61 is shallow. At low water it is nearly uncovered and the bottom has stones. This was known to the city and to several former masters of the Imp, employés of the Phœnix Sand & Gravel Company. It has been the custom for that company to consign cargoes of sand to Keating at the bulkhead of the slip close to the Sixty-First street pier, and the masters had seen to it that the cargo was discharged at high water, so that, if the scow remained at low water, she was light. The Imp's master on his first voyage to Keating's made fast alongside a brick barge, which itself lay on the south side of Pier 61, and well out from the bulkhead. Later he moved in alongside the pier side and about 17 feet from the bulkhead. The Clearfield was alongside of him, further out from the bulkhead and in a place of safety. The Governor Hill lay alongside the bulkhead, but too far south to be in danger from shallow water. As the tide fell the Imp took the ground forward, probably on a stone close to the pier, and slowly heeled to port, being bows in; finally, at about dead low water she turned turtle, dumping her load of sand. As she upset she damaged the Clearfield and the bows of the Governor Hill.

As already stated, the former masters of the Imp had known of the danger and never lay there on a falling tide. On the evening in question one of Keating's men told the master of the Imp, then lying safely alongside the brick barge, not to pull in to the bulkhead till morning, when a gang would be there to unload her on the rising tide, because it was unsafe to lie at low water. The master of the Clearfield, when he left his boat, told the captain of the Imp not to pull in closer; but at that time he had already moved in along with the Clearfield from the brick barge to the pier side. McDermott, the master of the Governor Hill, also says that he told the master of the Imp that the bottom was dangerous; but it may be somewhat questioned whether ne did.

James A. Martin, of New York City, for the Imp.

T. C. Jones, of New York City, for the Clearfield.

George R. Allen and Chauncey I. Clark, both of New York City, for McDermott and the Governor Hill.

George P. Nicholson, of New York City, for the city of New York.

LEARNED HAND, District Judge. I find that the Imp got notice from Keating's man, while she lay off the brick barge, that it was dangerous to move in, because the bottom was not safe. Disregarding this, she moved in within 15 or 17 feet of the bulkhead and so got caught. I find that the warning so given by Keating's man was clear enough to exonerate the city, if the city had given it, and that it need have been given in no other terms. These being the facts, I think that the city is not liable, under Schoonmaker v. New York, 167 Fed. 975, 93 C. C. A. 227. In that case the court said that if Cockery, the stevedore, not a city employé, had actually given a warning of the berth's danger, the city would not have been liable at all.

The Clearfield and the Governor Hill urge that the city and the Imp are both liable; the Imp for disregarding the warning, and the city for failing to give warning. In Schoonmaker v. New York, supra, the decree below had been for the city; it had not been for divided damages. When the Circuit Court of Appeals held that they would have affirmed, but for the question of fact already noticed, they therefore said that, if the notice had reached the barge, the city was not liable. Nor is the explanation far to seek, because although the city's breach of duty remains as well, though notice reaches the barge from elsewhere, as though it does not, yet the mere breach of duty will not make the city liable unless it contributes to the injury. If the notice actually received was as full and explicit as it was the city's duty to give, then plainly the city's breach of duty did not contribute to the injury at all, because a second notice in similar terms would not have influenced the Imp's movements. Therefore, as I find that the Imp had the fullest notice necessary, I find that, within Schoonmaker v. New York, supra, the city is not liable.

In Union Ice Co. v. Crowell, 55 Fed. 87, 5 C. C. A. 49, it did not appear that any one had vicariously performed the wharfinger's duty. It did appear that the ship had been somewhat careless in examining the berth, but not that she had got any notice that there was any danger. The case was one where the wharfinger's duty had been performed by no one, and where the ship's negligence had not been such that any one could say that a warning would have been ineffec-

tual. Yet, there being some negligence, the court divided the damages. The Dave & Mose (D. C.) 49 Fed. 389, is almost identical.

It is true that Hartford, etc., v. Hughes (D. C.) 125 Fed. 981, suggests that the notice of a stone in the bottom ought to be more express than to say that, if injured, the owner must be responsible. It may be that this is quite true, but that in no wise affects the question whether it is not ample notice to say that the bottom is dangerous and must not be used at low water. It cannot be necessary to say that the danger consists of stones. Therefore, while I find that the city did not perform its duty as wharfinger, I do find that that duty was performed for it, and that, as its breach did not contribute to the injury, it is not liable.

This results in confining the recovery of McDermott, the Clearfield, and the Governor Hill to the value of the Imp. However, the Clearfield must divide her damages, because she was at fault as well as the Imp. I find as a fact that the Imp did not change her position after she was once tied up beside Pier 61 for the night. My reasons are that she capsized about 15 to 17 feet away from the bulkhead, and that when the Clearfield's master left he says she was about 20 feet away. That she should have been moved forward to the bulkhead and then back I do not believe. McDermott was not a persuasive witness. The master of the Clearfield no doubt thought the berth was safe as the Imp lay, when he left; but he knew of old that the berth was too shallow at low water, and that boats would go aground if too near the bulkhead. Though he warned the Imp not to pull in any closer, he was content himself to leave his boat for the night alongside where she was. In doing so, with the knowledge he had, it seems to me that he shared in risk of her position, and, as he was moored to her, of his own position in consequence. His position is like that of the ship in Union Ice Co. v. Crowell, supra, and The Dave & Mose, supra. He shared in the carelessness of the Imp. This is especially true, as he says that he knew boats that got too near the bulkhead would list as the tide fell. By consenting to the movement of the Imp away from a place of safety and towards a place of danger, he took his chance.

The libels against the city are dismissed, with costs. The claims of McDermott and the Governor Hill against the Imp are allowed in full; that of the Clearfield is allowed to one-half the damages. The city is dismissed from the limitation proceedings.