### UNITED STATES TRUCKING CORPORATION v. CITY OF NEW YORK.

(District Court, E. D. New York. June 14, 1926.)

No. 5682.

**1. Municipal corporations ⊂⇒849.**

City, owning pier and collecting wharfage, has duty to exercise reasonable care to ascertain condition of berths, to remove obstructions, or give notice thereof.

**2. Municipal corporations ⊂⇒849.**

City, owning pier, *held* at fault for failure to give warning of obstruction in berth, which was known to dockmaster, and liable for damages to coal hoister resulting therefrom.

**3. Wharves ⊂⇒20(5)—Visible superstructure of sunken barge alongside pier held not notice of obstruction in berth.**

Visible superstructure of sunken barge alongside pier *held* not notice of obstruction in berth to coal hoister, damaged by coming in contact with niggerhead of bow of submerged barge.

**4. Wharves 20(5).**

That engineer, in charge of coal hoister, went home for the night, leaving it properly tied to dock, *held* not a fault contributing to its damage from sunken obstruction in berth.

In Admiralty. Libel by the United States Trucking Corporation against the City of New York. Decree for libelant.

Foley & Martin, of New York City, for libelant.

George P. Nicholson, Corp. Counsel, of New York City, for respondent.

CAMPBELL, District Judge. On February 19, 1923, between 3:30 and 4 p. m., the coal hoister No. 2, owned by the libelant, went into North Henry street, and tied up at the dock on the side toward the bridge. The No. 2 was in charge of a man who had never been on that side before. Whatever may be the conflict in the testimony, I find the facts to be as follows:

At the time the No. 2 went in, there were on that side of the dock a lumber barge near the shore, and a coal barge, about the same length as the No. 2, farther out from the shore alongside the dock. The No. 2 took the place of the coal barge, and tied the coal barge outside and alongside of the No. 2, and she was to load the coal barge the next day. About 25 feet farther out, alongside, at the end of the dock, was the superstructure of a sunken barge. The No. 2 did no work the day of her arrival, and no one warned her or the engineer in charge of her of any dangerous obstructions in the berth, nor was there any flag, buoy, or mark of any kind to warn of danger at the point where the No. 2 berthed.

The respondent charged and collected wharfage from the libelant for the berth occupied by the No. 2 at that dock for that day. The coal barge had been occupying that berth for three or four days. With a northwest gale the tide was lowest, and there was a northwest gale on the day in question. At about 5 p. m. on that day, the engineer of the No. 2 went home, leaving her properly tied to the dock; but the next morning, when he arrived at the dock and saw the No. 2, he found that the bow of the No. 2 was entirely under water, while her stern was much higher, most of the hull being under water, while only a portion of her superstructure was submerged.

In preparing to raise the No. 2, a diver was sent down, who ascertained that the stern of the No. 2, on the falling of the tide, had come into contact with the niggerhead of the bow of the submerged barge, which had broken bottom planks of the No. 2, causing her to sink. Slings were arranged, the No. 2 was raised, two divers made temporary repairs to the bottom of the No. 2, and she was removed.

[1, 2] From the facts as found it appears that the pier was a city pier, at which wharfage was charged and collected, and it was the duty of the city to exercise reasonable care in ascertaining the condition of the berths at

this wharf, and to remove dangerous obstructions or give notice of the obstructions to vessels about to use the berths. M. & J. Tracy v. Marks, Lissberger & Son (C. C. A.) 283 F. 100. The berth occupied by the No. 2 was not a safe berth for her, although the coal barge had occupied that berth for three or four days before that time.

No warning marking or notice of danger from the position of the sunken barge under water was given by the city, notwithstanding the fact that a dockmaster employed by the respondent, who collected wharfage, on that pier, knew of the obstruction, but did not mark it, because he said that was the duty of the respondent's engineers, and this constituted a fault on the part of the city. M. & J. Tracy v. Marks, Lissberger & Son, supra.

The respondent cites Schoonmaker v. City of New York, 167 F. 975, 93 C. C. A. 227, and The Imp (D. C.) 225 F. 668; but they do not seem to me to sustain its contention, because there is no evidence of any kind of any warning being given to the engineer of the No. 2 of the obstruction by any one whomsoever.

[3] The fact that the superstructure of the sunken barge was visible does not, in my opinion, relieve the city from liability, nor did it constitute notice to the No. 2 or to the libelant, its agents or servants, of the obstruction under water, because the coal barge, whose berth the No. 2 took when it made fast to the dock, had occupied that berth with safety for three or four days, and the engineer in charge of the No. 2 had no knowledge of the obstruction under water. M. & J. Tracy v. Marks, Lissberger & Son, supra.

The fact that there was danger, due to the exceptionally low tide when a northwest gale was blowing, as on the night in question, was well known to the dockmaster, who collected the wharfage at that pier, and the danger to be apprehended therefrom was known to him, but not to the engineer in charge of the No. 2, and the respondent was guilty of negligence for failure to give proper warning thereof.

[4] The fact that the engineer in charge of the No. 2 went home for the night, leaving the No. 2 properly made fast alongside the pier, did not constitute a fault. The Kathryn B. Guinan, 176 F. 301, 99 C. C. A. 639. The libelant was without fault, and the respondent is solely to blame.

A decree may be entered against the respondent in favor of the libelant, with costs and the usual order of reference.