## UNITED STATES TRUCKING CORPORATION v. CITY OF NEW YORK.

Circuit Court of Appeals, Second Circuit.
April 4, 1927.

No. 230.

**1. Wharves** ⊂═⊃20(3)—**Wharfinger must use reasonable care to furnish safe berth, which duty is discharged by warning vessels of obstructions.**

It is duty of wharfinger for hire to use reasonable care to furnish safe berth, but wharfinger sufficiently discharges his duty if he warns vessels who use berth of obstructions, though burden is on him to show that this was done.

**2. Wharves** ⊂═⊃20(3)—**Visible deck house of sunken wreck alongside pier held sufficient notice of obstruction in berth.**

Visible deck house of sunken wreck alongside pier held sufficient notice of obstruction in berth to coal hoister, damaged by coming in contract with bow of wreck at low water.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by the United States Trucking Corporation against the City of New York. Decree for libelant (14 F.[2d] 528), and respondent appeals. Reversed, and libel dismissed.

George P. Nicholson, Corp. Counsel, of New York City (Charles J. Carroll, of Brooklyn, N. Y., and John T. Condon, of New York City, on the brief), for appellant.

Foley & Martin, of New York City (William J. Martin, of New York City, of counsel), for appellee.

Before MANTON, HAND, and SWAN, Circuit Judges.

HAND, Circuit Judge. The city owned and maintained a public wharf for hire at the foot of North Hudson street, Brooklyn. At the north side of the pier lay the wreck of a sunken boat bows in, whose deck house projected above the water at all stages of the tide. The evidence does not show the character of the boat or of the visible house, except that it was variously described as a hay barge, a hospital boat and an excursion boat. Beneath the water the fore-deck of this boat ran towards the bulkhead about thirty feet

from the end of the exposed deck house. The libelant sent a coal hoister to unload a coal barge already moored alongside the wharf inshore of the wreck. The bargee of the hoister moved out the coal barge and took her berth about thirty feet inshore from the exposed deck house of the wreck and alongside the wharf. At the first low water the outshore end of the hoister fouled the extreme bow of the wreck which impaled her and caused the damage in suit.

The wreck was not marked, nor did the city's dock masters give any warning to the hoister's bargee that it extended so far beneath the water as it did. The District Judge held the city liable for this failure to give any warning and it appealed.

[1, 2] The duty of a wharfinger for hire to use reasonable care to furnish a safe berth is beyond dispute (Smith v. Burnett, 173 U. S. 430, 19 S. Ct. 442, 43 L. Ed. 756), and has been settled in many cases. But it is a sufficient discharge of his duty, if he warns vessels who use it (Schoonmaker v. N. Y., 167 F. 975 [C. C. A. 2]; The Imp [D. C.] 225 F. 668), though the burden is on him to show that this was done. The question here is whether the warning was as broad as the danger, and turns on how much the deck house disclosed. That it warned all vessels of the existence of a submerged bow is beyond question, but it did not tell how far the deck ran forward. That depended upon the construction of the sunken boat, which was unknown beyond the fact that it was apparently of substantial size and not an ordinary scow.

It appears to us that the duty to ascertain this lay rather on the vessels mooring nearby than on the wharfinger. It was very easy to find out. All the bargee had to do was to stand at the stern of his hoister and with a pole find whether the bow of the wreck came so far. The general warning conveyed by the deck house seems to us as adequate as in The Hendrick Hudson (C. C. A.) 203 F. 694, which, though apparently not the case of a wharf for hire, turned on similar considerations. See too Peterson v. Great Neck Dock Co: (D. C.) 75 F. 683. In such cases it is indeed always a matter of degree how far the party primarily charged may safely rely upon the prudence of those who come upon the situation. There can be no general rule, and there will be no certain agreement. In laying down the relative duties in this situation we can do no more than attribute them as seems most reasonable, given the habits of ordinarily cautious people.

Similar situations though not involving wharves were similarly dealt with in The H.

S. Nichols (D. C.) 53 F. 665, 666, and McWilliams v. Penn. R. R. Co. (D. C.) 300 F. 687.

Decree reversed and libel dismissed.