**THE TENO et al.**
**THE TAMARACK.**
**THE KNICKERBOCKER.**

**NEW YORK & HASTINGS STEAMBOAT CO.
v. COMPANIA SUD AMERICANA
DE VAPORES.**

**CHILE EXPLORATION CO. v. WESSEL,
DUVAL & CO. et al.**

**No. 109.**

Circuit Court of Appeals, Second Circuit.

Jan. 5, 1931.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and Eugene Underwood, both of New

198

York City, of counsel), for the Tamarack, the Knickerbocker, and New York & Hastings Steamboat Co.

Barry, Wainwright, Thacher & Symmers, of New York City (Earle Farwell, of New York City, of counsel), for the Teno and Compania Sud Americana de Vapores.

Bigham, Englar, Jones & Houston, of New York City, (Richard F. Shaw, of New York City, of counsel), for Chile Exploration Co.

Leo J. Curren, of New York City, for Thomas Kent, Inc.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

On May 29, 1926, in the slip between Piers 29 and 30, Brooklyn, the lighter Tamarack sank after receiving a cargo of copper bars from the steamship Teno. The appellant Thomas Kent, Inc., was the stevedore engaged in unloading the steamship Teno, a twin screw steamer of Chilian registry. She docked at Pier 29, moored bow in, with her port side to the pier. She carried a general cargo, some of which was copper bars, which were stowed in No. 5 hold, the aftermost of the vessel. While the cargo was loaded on the Tamarack, she was alongside the Teno, abreast of the No. 5 hatch, with her stern toward the stern of the Teno. At first the copper was stowed on the after part of the lighter, which caused her to go down by the stern. When all the copper in No. 5 hold had been discharged on the Tamarack, the stevedore attempted to move from No. 5 hatch to a position abreast of the No. 2 hatch, but found that she could not be moved. At this time the Tamarack had swung some twelve or thirteen feet under the counter of the Teno so that she was above the steamer's starboard propeller. The court below found on the evidence that the ligher had become "hung up" on that propeller. The master and the stevedore's men moved some of the piles of copper from the after port corner of the lighter to the after starboard corner in order to give the lighter a list to starboard so that she would slide off the propeller. When she freed herself, water rushed in through an uncovered bunker hole and she careened to starboard, dumping her cargo, then rolled over to port, and sank. The court below imposed liability upon the Teno for damage to the Tamarack, and held both the appellant Thomas Kent, Inc., and the Tamarack liable for the cargo loss.

The sinking of the Tamarack was brought about by swinging under the counter of the Teno and becoming impaled upon the starboard propeller of the Teno. There was a sign on the stern of the Teno, on one side in Spanish and the other in English, giving notice of the danger of the twin screw propellers. Upon a survey it was found that there was a cut or gouge in the bottom planks of the lighter, three or four feet in from one side. Photographs are exhibited showing this. For the Tamarack to have come in contact with the propellers from the position she first assumed at the side of the vessel, it is evident that she swung under the counter of the Teno. This permitted her to rest on the propeller. That she was caught there admits of no dispute on this record. Those on the Teno did not place her alongside nor exercise any dominion or direction over her. The officers or members of the crew of the Teno did nothing in the discharge of the cargo. It furnished hydraulic power to the cranes which were operated by the stevedore's men. The Tamarack was shifted by the stevedore with the aid of the master of the lighter into her berth alongside the steamer. Both the master and the stevedore knew or should have known that it required watchful care to prevent the lighter from coming in contact with the propeller. They should have avoided the swing under the counter of the steamer.

Moreover, it appears that the stevedore's men thus engaged had knowledge that the Teno had twin screws. They knew that a sign was customarily placed warning against the danger of the propellers. Such danger should have been recognized and guarded against by the stevedore. The Willie, 29 F. 153 (D. C. S. D. N. Y.).

It was likewise the duty of the master of the Tamarack to see that his barge was moved safely and kept out of danger. The master of the Tamarack was blameworthy. The stevedore was an independent contractor. The Satilla, 235 F. 58 (C. C. A. 2); The Hamburg, 204 F. 590 (C. C. A. 2); Soderberg v. Atlantic Lighterage Corp., 19 F.(2d) 286 (C. C. A. 2). But the master of the barge recognized the danger, as is illustrated by his request in the afternoon to move his lighter further ahead because he was afraid it would get on the propeller. But he took no further action, either by insisting that his lighter be moved or by seeing that it did not swing in under the counter. In order to strike the propellers, the swing must have been great enough to make it nec-

essary that one-third of the Tamarack's beam be under the counter. The Teno was in no way responsible for the damage, for she gave a warning, conveyed by the sign to those who apparently had knowledge that the ship had twin screws, or, if reasonable diligence were exercised, could have acquired that information. There was no failure of duty on the part of the Teno, and exoneration from blame follows. United States Trucking Corp. v. City of N. Y., 18 F.(2d) 775, 776 (C. C. A. 2).

Both the lighter and the stevedore are liable to the cargo owner for its loss. It was the negligence resulting in the Tamarack resting upon the propeller which caused the sinking, and those responsible, therefor must, as a consequence, compensate the cargo owner. Both the master and the stevedore cooperated in loading the cargo and moving the copper on the lighter. The court below properly held both responsible.

The decree will be modified awarding half damages to the New York & Hastings Steamboat Company for the damages to the lighter Tamarack. Both the stevedore and the lighter Tamarack are held responsible for the cargo loss. Costs allowed the Teno.

Decree modified.