**Fred KOSNAC, as owner of THE OCTYN, her engines, etc., Libelant,**

v.

**THE NORCUBA, her engines, etc., North Atlantic and Gulf Steamship Company, Inc., Claimant.**

United States District Court
S. D. New York.

July 6, 1956.

Joseph M. Meehan, New York City, for libelant.

Burlingham, Hupper & Kennedy, New York City (Eugene Underwood, Robert F. Lynch, New York City, of counsel), for claimant.

THOMAS F. MURPHY, District Judge.

This is a proceeding in admiralty for damages caused by the sinking of the launch Octyn after it came into collision with the propeller of the claimant's Norcuba as the Norcuba was leaving its anchorage in New York Harbor.

The Octyn was 38′ long with an 11′ beam and a 4′ draft, the pilot house forward, the cabin amidships, an open cockpit, with a recently installed Gray machine engine. The Norcuba is a Liberty ship 445′ long and at the time was without cargo or ballast with her propeller out of the water to its hub.

On April 1, 1953, at 5:30 P.M., the Norcuba had anchored just west of the Bay Ridge Channel and opposite the 69th Street pier with her bow headed south into a flood tide. A number of small launches had left the 69th Street pier and were alongside the Norcuba for the purpose of carrying such members of the ship's crew as desired to go ashore. The Octyn, which was in the same business, got a later start than the others but it eventually left the pier and took a position alongside the Norcuba for the same purpose.

Shortly after 6 P.M. the captain and the pilot of the Norcuba returned to their ship and, as they were ascending the ladder, told the various launches to leave as they were getting under way immediately (the captain and the pilot had been

ashore to receive telephone instructions for berthing).

There is some conflict as to how many launches were then alongside the Norcuba but there is no dispute that all left but the Octyn. The Octyn's position was just aft of the ladder amidships or about 175′ to 200′ forward of the stern and she held her position by whipping her bow into the ship and keeping her engine in gear at 500 R.P.M. It had a capacity of making between 15 and 20 knots at full speed or 2100 R.P.M. The Octyn waited in such position, its captain testified, because some unidentified crew member expressed a desire to go ashore. I find, however, that he waited more in hope than at request. In any event, shortly after 6 P.M. preparations were made for getting under way. The Octyn's captain testified that he heard the anchor chain as it was hove in over the wildcat and saw the propeller in motion approximately ten minutes before the accident. But after the ship started to make headway on a hard right turn in the flood tide the Octyn was pulled back toward the stern even though it was at full speed and tried, without success, on a hard left, to get away. Within minutes the Octyn was impaled on the ship's propeller, burst into flames and sank. It is obvious, therefore, that the Octyn was conscious of its apparent danger and heedlessly waited too long and too close.

What is more troublesome is the testimony of the Norcuba's captain and pilot and its obligation, if any, to the Octyn.

The captain and the pilot each testified that before the order was given for slow ahead at 6:23½ P.M. each went to the port wing of the bridge to see if all the launches were clear of the ship and each testified that he saw no launch alongside although they saw the others making for the shore. I cannot accept this testimony and find as a fact that neither looked over the side of their ship but assumed that the capitain's warning to the launches as he boarded was sufficient. However, the problem remains whether accepting the warning as having been given caution required another look before getting under way. The fact that each testified that he took this precautionary step is some evidence that they each realized that the danger of nearby launches was foreseeable. The claimant's brief partially concedes this obligation for it states, "The duty of a ship with regard to her propellers is merely to give fair warning that * * * they are about to be put in use."

█ The duty imposed on the Norcuba under these circumstances is, however, much broader and has been aptly described by the Supreme Court in The Nevada, 1882, 106 U.S. 154, 159, 1 S.Ct. 234, 238, 27 L.Ed. 149: "The ocean steamer is one of the great inventions of the century, and one of the advanced instrumentalities of modern civilization; but whilst it may freely exercise its powerful propeller and sport its leviathan proportions on the ocean or in deep and open waters, *it is justly required to observe extraordinary care and watchfulness when surrounded by feebler craft in a crowded harbor.*" (Emphasis supplied.) This care and circumspection the Norcuba failed to exercise. If the captain or the pilot, or a lookout which it did not have, had actually looked over the port side the Octyn's plight could have been seen. Although the Octyn had no lights (a fault since the sun set at 6:21) nevertheless it was still twilight and the absence of lights was not the proximate cause of the accident.

The claimant relies on The Teno, 2 Cir., 1931, 47 F.2d 197 and The East Indian, 2 Cir., 1932, 62 F.2d 242, but they are not apposite since in each of those cases the ships were lying in their berths with their propellers motionless.

█ Although the captain gave warning to the launches when he boarded, nevertheless his was the last clear chance and he failed to exercise it. We realize that the use of common law principles in admiralty are considered by many to be an anathema, but when such a respected member of our Court of Appeals as the late Judge A. N. Hand saw fit to

recognize the rule in The Cornelius Vanderbilt, 2 Cir., 1941, 120 F.2d 766, 768, and used it without apology, we feel that it is authority for us to say that the Norcuba, conscious of the danger of its propeller to the feebler craft, had the last clear chance to see that all the launches were clear of its side. Inasmuch as it negligently took the risk of assuming they were clear it too contributed to the casualty.

Accordingly, both the Octyn and the Norcuba are equally guilty of failure to exercise reasonable care and a decree should be entered in favor of the owner of the Octyn for half damages.