243 F.2d 890
 Fred KOSNAC, as owner of THE OCTYN, her engines, etc., Libellant-Appellee,
v.
THE NORCUBA, her engines, etc., North Atlantic and Gulf Steamship Company, Inc., Claimant-Appellant.
 No. 299.
 Docket 24422.
 United States Court of Appeals Second Circuit.
 Argued April 4, 1957.
 Decided May 8, 1957.
 
 Joseph M. Meehan, New York City, for libellant-appellee.
 Burlingham, Hupper & Kennedy, New York City (Eugene Underwood and Robert F. Lynch, New York City, of counsel on the brief), for claimant-appellant.
 Before CLARK, Chief Judge, LUMBARD, Circuit Judge, and LEIBELL, District Judge.
 LUMBARD, Circuit Judge.
 
 
 1
 This is an appeal from an order of Judge Murphy of the District Court for the Southern District of New York, sitting in admiralty, awarding one half damages to the libellant, Kosnac, for the destruction of his motor launch, the Octyn, resulting from a collision with the S.S. Norcuba. Judge Murphy found that the negligence of both parties contributed to the accident.
 
 
 2
 On the evening of April 1, 1953, the S.S. Norcuba was anchored in the East River, off 69th Street, Brooklyn. Her master had gone ashore to telephone for berthing instructions, and various small craft, including the Octyn clustered about the ship's ladder seeking to be hired to transport crew members to the shore. Shortly after 6:00 P. M. the captain and the pilot of the Norcuba returned to their ship and, as they were ascending the ladder, told the various launches to leave as they were getting under way immediately. All left except the Octyn which maintained her position by keeping her engine running and "whipping" her bow against the side of the Norcuba.
 
 
 3
 The Norcuba was put slow ahead at 6:23½ P.M., but the Octyn maintained her position. When the ship went full ahead on a hard right, the launch tried to escape by going full speed on a hard left, but became impaled on the ship's propeller, exploded, burned and sank.
 
 
 4
 The captain of the Octyn admitted that he heard the Norcuba up anchor at least ten minutes before the collision and that even though he had seen and heard the ship's propeller turning over for almost the same period he did not attempt to move from her side. The trial court found that "the Octyn was conscious of its apparent danger and heedlessly waited too long and too close." [142 F.Supp. 378.] This is undeniable.
 
 
 5
 The district court, however, held the Norcuba also at fault in failing to use the care and circumspection required of a large ship surrounded in a harbor by smaller craft, saying that "* * * the Norcuba, conscious of the danger of its propeller to the feebler craft had the last clear chance to see that all the launches were clear of its side." The judge below held that if someone had actually looked over the side the "Octyn's plight could have been seen," and the collision averted.
 
 
 6
 In the circumstances here, the Norcuba had no duty to do more than give the warning which it did sufficiently in advance of getting under way. Nor is there any evidence that any of the Norcuba's crew saw the Octyn and were aware of her plight just prior to the accident. Although the doctrine of last clear chance is recognized in admiralty, The Cornelius Vanderbilt, 2 Cir., 1941, 120 F.2d 766, no evidence was adduced to show that the Norcuba had such a chance.
 
 
 7
 The warning having been given when the Octyn's captain thereafter heard the anchor being lifted, and heard and saw the movement of the propellers of the Norcuba for ten minutes prior to the accident, he had full knowledge of the dangers attendant in attempting to maintain his position. Henjes Marine, Inc., v. United States, 2 Cir., 1949, 176 F.2d 310. During this entire period the Octyn's motor was running. It was capable of making fifteen knots and apparently could easily have pulled away from the ship at any time up to the moment when the collision became imminent.
 
 
 8
 The decision of the district court is, therefore, reversed and the libel dismissed.
 
 
 9
 LEIBELL, District Judge (dissenting).
 
 
 10
 Accepting the physical facts surrounding the accident as found by the trial judge, the launch Octyn was clearly at fault as the majority opinion states. But the Norcuba was also at fault, and on that point I am not in agreement with the majority opinion.
 
 
 11
 The Norcuba's captain, as he boarded his ship shortly after 6 P.M. on April 1, 1953, warned the launches that were hovering near the ship to taxi crewmen ashore, that the ship was getting under way immediately. The Octyn remained alongside the Norcuba 175 to 200 feet forward of the ship's stern, waiting for a particular fare. The other launches left. At that time the Norcuba was at anchor just west of Bay Ridge Channel, off 69th Street, Brooklyn. She was about to move to another anchorage in the lower bay.
 
 
 12
 The captain of the Octyn admitted that he had heard the Norcuba heaving up the anchor and had heard her propeller turning for ten minutes before the accident. The order for slow ahead was given at 6:23½ P.M. The tide was flood. When the ship gained headway and her rudder was put hard right, the launch tried to escape by going ahead at full speed on a hard left, but became impaled on the ship's propeller which was half out of water. The Norcuba was light, with no ballast. The trial judge found that "the Octyn was conscious of its apparent danger and heedlessly waited too long and too close."
 
 
 13
 The trial judge also held that the Norcuba was at fault, because if the master or pilot (or a lookout, which it did not have) had actually looked over the port side of the Norcuba "the Octyn's plight could have been seen." I agree with Judge Murphy that the Norcuba's master should have taken that additional precaution, especially since he intended to change the course of his vessel by a hard right, which would swing the stern of the ship to the left and it was on the port side, the shore side, that the Octyn was lying. Indeed, the master's testimony and the pilot's testimony impliedly recognized the need for that precautionary measure. Each testified that they both had looked over the port wing of the bridge to see if all the launches were clear of the ship. The trial judge did not accept that testimony and found as a fact that neither the master nor the pilot looked over the side of the ship. The reason why he rejected their testimony was sound. He concluded that if they had looked over the port side of the ship they would have seen the launch, that it was light enough to see the launch. His findings are not clearly erroneous. This appellate court should give due weight to the fact that the trial judge saw and heard the witnesses. Thomas v. Pacific S.S. Lines, 9 Cir., 84 F.2d 506, 507; The Pennsylvania, 9 Cir., 139 F.2d 478, 481.
 
 
 14
 An appellate court in reversing the judgment of a trial court, sitting without a jury in admiralty "may not set aside the judgment below unless it is clearly erroneous. * * * A finding is clearly erroneous when `although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.'" McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 8, 99 L.Ed. 20. In the case at bar I have no such conviction. As I see it, the issue clearly presented is one of law, whether, under the facts as found by the trial judge, those in charge of the Norcuba were under a duty to look over the port side of the ship to see if all the launches were at a safe distance, before putting the ship on a hard right. I believe that the ship's officers were obliged to take that precautionary measure. The accident was substantially contributed to by the fault of the Norcuba, although in a less degree than by the fault of the Octyn.
 
 
 15
 The decree of the court below should be affirmed in that it held both the launch Octyn and the ship Norcuba at fault, and divided the damages. In re Adams' Petition, 2 Cir., 237 F.2d 884, certiorari denied 352 U.S. 971, 77 S.Ct. 364, 1 L.Ed. 325.