## THE MARSHALL.

*(District Court, S. D. New York. June 16, 1882.)*

1. TUG AND TOW—RIGHT OF WAY—RIVER NAVIGATION.

   A tug with a heavy tow upon a long hawser, coming down the river with the tide, having to pass a sharp bend where the tide sweeps rapidly towards the opposite shore, has the right of way as against a similar tug and tow coming up the stream below the bend. Where the M., with such a tow, came round West Point, on the Hudson river, after signaling the tug C., with a similar tow, below the Point, and receiving similar blasts in return, and kept within 25 or 50 feet of the flats below the Point, and drew as near the Point as was safe, but the end of her tow swung with the tide so as to collide with the tow of the C., *held*, that the M. was not in fault, as she ought neither to have stopped sooner nor to have attempted to cross the C.'s bows to the easterly side of the stream.

2. INJURY TO TOW—NEGLIGENCE—ACTION AGAINST ALL VESSELS IMPLICATED.

   Where a barge in tow is injured without her own fault, through the negligence of some one of other vessels, the suit ought to be against all, unless some are clearly not liable, in order that the respective rights of the parties may be determined in a single suit.

*Thomas C. Campbell*, for libellant.
*Benedict, Taft & Benedict*, for claimants.

BROWN, D. J. By the statute of this state, steamers navigating the Hudson river are bound to keep upon the right-hand side. The Marshall, in coming down the river with the tide, would have been clearly in the wrong, therefore, in undertaking to go to the left, unless there was clearly no alternative. That no such necessity ex-

isted is evident from the fact that the tows nearly cleared each other, though the Cayuga was in the middle of the river, instead of being upon the easterly side as required by law, which would have enabled the Marshall's tow to pass uninjured. The evidence shows that signals were exchanged half a mile apart for each to pass to the right, and the Marshall had a right to assume that the Cayuga was in the easterly half of the stream, and far enough over to avoid the known necessary swinging of the tow in passing around West Point with the tide.

It is established by a great preponderance of evidence that the Marshall, in coming around the point, went as near the rocks as was safe, and drew her hawser tier very near to the westerly shore, and as near as they were ever known to go, while she hugged the flats upon the westerly side, below the Point, within 25 or 50 feet of their edge.

So far as the Marshall was concerned the collision was caused, it seems to me, solely by the swing of the ebb tide. It was no greater on this occasion, so far as appears, than was usual at that point; and until a collision was seen to be inevitable, it was plainly the duty of the Marshall to keep on hauling as close to the westerly shore as practicable, because this tended to pull the tow out of the swing of the tide and away from the Cayuga's tow below. When it was seen that the collision could not be helped, it was then her duty to stop, in order that the blow might be lightened. In both these respects the Marshall's navigation was correct. In going along within 25 or 50 feet of the flats the Marshall approached them as near as prudent navigation would allow, and I am unable to perceive any fault in her navigation. It was impossible for her to stop before reaching the Cayuga, because her tow upon a hawser 100 fathoms long, and drifting with the tide, would have gone wild and become unmanageable. Had there been any real difficulty in the two tows passing each other off West Point, it was the legal duty of the Cayuga, which was coming against the stream with her tow, to have stopped below until the Marshall and her tow had passed. The Marshall clearly had the right of way, and had a right to assume that the Cayuga would either stop or go far enough to the easterly side of the river to allow the Marshall and her tow to pass. *The Galatea,* 92 U. S. 439; *The Defender,* 1 Bond. 397.

It is urged that the placing of the libellant's boat in the fourth tier instead of the hawser tier was a fault in making up the tow, because, as is claimed, she was deeply loaded, and by her weight in

the rear part of the tow increased the natural swing with the tide to the eastward. I do not find any evidence to show that the collision was caused by the place of the libellant's boat in the tow, or that it would have been avoided had it been placed elsewhere.. The difference between the weight of his boat and others, and whether in the first or second tier, or the fifth, is not shown by any evidence to be material in causing the collision; and as the hawser was from 100 to 120 fathoms long, any difference in the swing of the tow from this cause must have been very slight, if any; nor does it appear that the tow was made up in any unusual manner.

As the libellant is himself apparently without fault, I regret that through some misapprehension of the facts all the parties concerned were not joined in this suit, so that the libellant's rights could have been finally adjudicated in one action, and the loss imposed where, upon hearing all the parties, it should seem to belong. But upon the proofs, as they appear in this action, I can find no legal fault in the Marshall, and have no alternative but to dismiss the libel, with costs.