THE SCOTS GREYS *v:* THE SANTIAGO DE CUBA.[1]

THE SANTIAGO DE CUBA *v:* THE SCOTS GREYS.[1]

*(Circuit Court, E. D. Pennsylvania.  October 30, 1883.)*

1. COLLISION—MEETING OF VESSELS IN NARROW CHANNEL.—LIGHT AND HEAVY STEAMERS—DUTY ARISING FROM SPECIAL CIRCUMSTANCES.
    Where, in a narrow, dangerous channel, a light steamer stemming the tide, having her movements completely under command, observed a steamer of greater draught, deeply laden, coming with the tide, it was the duty of the light steamer to slow down or stop until the positions and courses of each should become known.

2. CROSSING COURSES—MANEUVER IN EXTREMIS.
    The light steamer having failed to do either, but having ported her helm and attempted to run across the track of the heavy vessel, when the vessels were in dangerous proximity and the heavy vessel near a shoal, in consequence of which maneuver a collision occurred, the light vessel was in fault.

In Admiralty.

Appeal from the decree of the district court sustaining the libel of the Scots Greys, and dismissing the libel of the Santiago de Cuba. The facts are set forth in the following opinion, and also in the report of the same case in the district court, 5 FED. REP. 369.

*Curtis Tilton* and *Henry Flanders,* for the Scots Greys.

*John G. Johnson,* for the Santiago de Cuba.

McKENNAN, J.  These are cross-libels, in which the district court adjudged the Santiago de Cuba in fault, in a collision between her and the Scots Greys, and decreed damages against her accordingly. The evidence touching the position, course, and government of the vessels before and about the time of the collision is of unusual volume, and consists chiefly of the testimony of the officers and crews of the respective vessels.  Hence, as is almost always the case under such circumstances, it is conflicting and contradictory, and any attempt to

---

[1] Reported by Albert B. Guilbert, Esq., of the Philadelphia bar.

reconcile it would not advance the decision of the case. It can only be dealt with by adopting such conclusions of fact of material import as may seem to be supported by a preponderance of the probabilities of their truth.

### FINDING OF FACTS.

(1) About midday on the nineteenth of July, 1879, a collision occurred between the steamer Scots Greys and the steamer Santiago de Cuba, in the Delaware river, a short distance above the Horseshoe buoy, on the western side of the channel, by which considerable injury was caused to both vessels.

(2) The Scots Greys was an iron steamer, about 300 feet in length, was loaded, and drew 21 feet of water, and was ascending the river towards the port of Philadelphia.

(3) The Santiago de Cuba was a wooden steamer, was light, and drew $13\frac{1}{2}$ feet of water, and was descending the river.

(4) The tide was flood, and the current, deflected by the Horseshoe shoal, tended strongly to the eastern or New Jersey shore of the river.

(5) This shoal was somewhat in the shape of a horseshoe, with its base on the Pennsylvania or western shore and its apex in the river, leaving a channel about 400 yards in width between it and the New Jersey shore. Near this apex, on the eastern edge of the shoal, a buoy is anchored to indicate the turn of channel.

(6) Both vessels were in sight of each other for such a distance before they met as to involve no danger of collision, if they had been carefully and skillfully navigated.

(7) The Scots Greys first reached the buoy, and put her helm to starboard to make the turn of the channel, and when she rounded the buoy straightened up to proceed on the western side of the channel.

(8) At this time the Santiago de Cuba was several hundred yards above the Scots Greys, on the western side of the channel, but her course was eastward of that of the Scots Greys, and to her starboard.

(9) At the Horseshoe shoal the narrowness and shape of the channel and the tendency of the tide impose upon vessels sailing in opposite directions the duty of observing special caution as a necessary condition of their safety in passing each other.

(10) In starboarding her wheel to carry her past the buoy, and in straightening up after she rounded it that she might pursue the western line of the channel, the Scots Greys did what was proper for her under the circumstances.

(11) When the vessels were several hundred yards apart, the Santiago de Cuba sounded a signal with her whistle and put her helm hard a-port, indicating an intention to pass the Scots Greys on her port bow, and which gave her a direction across the track of the Scots Greys.

(12) Whether this signal was or was not heard on the Scots Greys, it was not answered, but she kept her course up the western side of the channel.

(13) The speed of the Santiago de Cuba was not diminished; at least, not soon enough.   If she had stopped or slowed down when the Scots Greys was rounding the buoy and straightening up, the collision would not have occurred, because the Scots Greys would have passed the place of the collision before the Santiago de Cuba reached it.   Nor would it have occurred if the Santiago de Cuba had not hard ported her helm and sought to pass the Scots Greys on her port side.

(14) If, in response to the Santiago de Cuba's movement, the Scots Greys had hard ported her helm, the vessels would probably have been brought together head on, with more disastrous consequences.   But the impact of the former's bow was upon the starboard side of the latter, about 30 feet from her bow, thus indicating that if she had kept her course the vessels would have passed in safety.

### CONCLUSIONS OF LAW.

Considering the condition of navigation at the locality in question, the size and depth in the water of the Scots Greys, the direction in which she was sailing, and the difficulty of controlling her movements, she was not in fault in adopting a course up the western side of the channel and in pursuing it without deviation.

In view of the same considerations, of the size and draught of the Santiago de Cuba, that she was light, that she was descending the river with the tide towards her head, and her movements completely under command, and that the passage of vessels such as the two in question at the Horseshoe buoy is attended with risk of collision, it was incautious in the Santiago de Cuba to pass the Scots Greys at that point, if she could avoid it.   It was the duty of the Santiago de Cuba to stop or slow down when she observed the Scots Greys rounding the buoy.   Failing to do either, and in porting her helm and attempting to run across the track of the Scots Greys, when the vessels were in such proximity to each other, she was in fault and must be held responsible for the collision.

There must, therefore, be a decree dismissing the libel of the Santiago de Cuba, with costs, and a decree in favor of the Scots Greys for the amount of damages sustained by her, and costs.