THE RICHMOND.

THE E. HEIPERSHAUSEN.

RILEY et al. v. THE RICHMOND and THE E. HEIPERSHAUSEN et al.

(Circuit Court of Appeals, Second Circuit.  September.26, 1894.)

No. 110.

COLLISION — TOW AND ANCHORED VESSEL — NEGLIGENCE OF ANCHOR WATCH—
TUG AND HELPER.
· A tug going up the Hudson river with a flood tide, at night, with a tow consisting of 9 tiers of canal boats, with 4 boats in most of the tiers, and making a flotilla about 1,600 feet long, discovered a vessel half a mile ahead, lying at anchor outside the boundaries prescribed by the regulations of the secretary of the treasury. The tug and her helper undertook to draw to the opposite side of the river, but the last tier of the tow was swung by the force of the tide beyond the line of the tug, and libelants' boat, which was in such tier, struck the anchored vessel, and was sunk. The anchor watch on the anchored vessel saw the flotilla approaching when some distance away, and, if he had given his vessel chain, the tide would have carried her back and out of danger. He testified he attempted to let out the chain, but failed. .Held, that both the tug and anchored vessel were in fault, and properly condemned to pay libelants damages. 56 Fed. 619, affirmed.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by F. Riley and another against the steam tug E. Heipershausen and the steamship Richmond for collision. There was a decree for libelant against both vessels. 56 Fed. 619. The owners of the tug and steamship appeal. Affirmed.

Owen, Gray & Sturges, for appellant the Richmond.
Robert D. Benedict and Mr. Carpenter, for the Heipershausen.
Alexander Cameron, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The steamship Richmond and the steam tug Heipershausen were both adjudged in fault by the district court, and condemned to pay the libelants damages for the injuries inflicted upon the canal boat Thomas Flood and her cargo by the collision between the steamship and the canal boat. Both the owners of the steamship and of the tug have appealed, and each appellant assigns as error that the vessel of the other should have been found solely in fault by the district court. The collision took place about 9 o'clock in the evening of June 10, 1892, under the following circumstances: The Heipershausen started from the East river with a tow of canal boats bound for Albany. As she proceeded up the Hudson river, other canal boats were added to the flotilla, including the libelants' canal boat, which was taken from one of the piers at Hoboken. The flotilla then consisted of 9 tiers of canal boats, with 4 boats in most of the tiers, and the Heipershausen leading, with hawsers 550 feet long attached to the outside boats in the front tier, constituting a flotilla about 1,600 feet in length. The

steam tug Haviland was acting as a helper to the Heipershausen, towing alongside of her, with a hawser fastened to one of the middle boats of the head tier. While the flotilla was proceeding along the westerly side of the river, parallel with and about 500 feet from the ends of the piers, the Heipershausen discovered the steamship Richmond about half a mile away, lying at anchor, and somewhat to the easterly of the course of the flotilla. The evening was clear, there was no wind, and the tide was flood. The Richmond had her regulation anchor light properly set and brightly burning, and a man on deck watching the anchor. She was anchored somewhat outside the boundaries prescribed by the regulations of the secretary of the treasury. These regulations, made pursuant to the act of congress of May 16. 1888, authorizing the secretary of the treasury to define and establish an anchorage ground for vessels, among other places in the Hudson river provide that vessels may anchor in the Hudson river to the westward of a line from Castle Point to Bull's ferry, and north of Fourteenth street, Hoboken ferry landing, but that in no case shall a vessel anchor within 200 yards of the shore, or in such position as to impede the movements of a ferry, or to prevent ready access to and from the piers. Opposite and above the Richmond, on the easterly shore of the river, some vessels of the United States navy were lying at anchor, but there was a clear space of a quarter of a mile or over between the Richmond and the nearest of these vessels. Soon after discovering the Richmond, the tug and her helper put their helms hard a-port, and made for the opposite side of the river, carrying the flotilla on an oblique course across and up the river, at a speed of six or seven miles an hour. When the Heipershausen had come up to within a short distance of some of the naval vessels, the rear of the flotilla was below the Richmond, swinging by the force of the tide beyond the line of the course of the tug. and over towards the Richmond; and the libelants' canal boat, which was the port boat in the last tier, struck the anchor chain, and then the stem of the Richmond, and soon after she filled and sank with her cargo. The man acting as anchor watch upon the Richmond saw the flotilla approaching when it was a considerable distance away. A man upon one of the rear boats of the flotilla shouted to him to give the Richmond chain. If he had done this. the tide would have carried her back and out of danger. He testifies that he attempted to let out the chain, but did not succeed. As the boats struck, the mate of the Richmond came on deck, and immediately let out the Richmond's chain. With the strong tide then running, it is apparent that she would have readily swung back if the chain had been seasonably released.

Upon these facts, we think it very clear that fault is to be imputed to both the Heipershausen and the Richmond. If the tug was free from negligence in all other respects. it suffices to condemn her that she undertook to navigate a flotilla in a part of the river where she was likely to meet numerous vessels. when she had so arranged and organized it that she could not, under the normal conditions of wind and tide, safely conduct it by a vessel lying at anchor, seen half a

mile away, with no obstruction between or beyond, and when there was a clear channel in which to maneuver, at least a quarter of a mile wide on her own starboard hand. It was her duty, going on a flood tide, with a flotilla over a quarter of a mile long, to provide some means for controlling the rear tows in case it should become necessary, in order to avoid other vessels, to deflect materially from a direct course. The fact that she could not execute safely such a maneuver as she attempted demonstrates that her tow, as she had made it up, was unwieldy, unmanageable, and a menace to the safety of other vessels entitled to the use of the river. When she undertook the maneuver, she could have detached her helper, and sent it to the rear of the flotilla, to assist in keeping the end of the tow in line. Under the circumstances, her omission to do this was inexcusable.

Although the Richmond was in fault, because she was occupying a position in breach of the regulations respecting the anchorage ground, we are not satisfied that this fault was, under the circumstances, a contributory cause of the collision. If, notwithstanding the fault of the Richmond, the Heipershausen could have avoided the collision by exercising ordinary care, the Richmond ought not to be condemned. Under such circumstances, the fault of the Richmond would not be a proximate cause of the loss. If, however, her fault in this respect was remote, she was in fault in another respect, which suffices to charge her with liability. It is the duty of a vessel brought up in a frequented channel to maintain a vigilant anchor watch, ready to give her chain or sheer her clear of an approaching vessel. The Richmond was anchored at a place presumably inconvenient or embarrassing to the navigation of other vessels. It was a place, also, in which long flotillas of boats in tow of tugs were frequently passing in both directions. The anchor watch did not exercise reasonable vigilance to avoid the collision. His explanation of his failure to let out her chain is quite inadequate. There is no reason why the Richmond should not have taken the chain, and we are satisfied either that the man on watch did not attempt to let it out, or did not know how to do so. It is patent that a competent and vigilant man might have released the chain in season, if not to have avoided a collision altogether, certainly to have materially mitigated the consequences.

We conclude that the district court properly condemned both vessels, and that the decree should be affirmed, with interest and costs.