### THE J. C. AUSTIN.

### THE McDONALD.

#### (District Court, S. D. New York. June 26, 1903.)

1. COLLISION—TOWS MEETING IN HUDSON RIVER—FAILURE TO KEEP LONG TOW
   IN LINE.

   A steamer engaged in towing about 70 canal boats down the Hudson river, arranged in 14 or 15 tiers on hawsers, and extending to a length of 2,200 feet, which, although having two helper tugs, allowed the tail of the tow to swing close to the eastern shore, while she was on the western side of the river, thus occupying practically the entire channel, was in fault for a collision between one of the tows near the end of the line and a meeting boat which was being pushed up the east side of the channel by a steam canal boat. The latter, which had started to pass the steamer and tow before knowing of its extraordinary length or position across the river, held not in fault where, after discovering the danger, she stopped and reversed, and did all that was possible to avoid the collision.

In Admiralty. Suit for collision.

James J. Macklin, for libellant.
Carpenter, Park & Symmers, for the J. C. Austin.
Amos Van Etten, for the McDonald.

ADAMS, District Judge. This action was brought by the owner of the canal-boat Thomas Leonard against the steam canal-boat J. C. Austin, to recover the damages caused to him by a collision on the 4th of July, 1900, between the Leonard and a boat being pushed ahead

of the Austin. The Leonard was in tow, with about 70 other vessels, on hawsers, of the steamboat McDonald, bound down the Hudson River from Albany to New York. The tow was altogether about 2,200 feet long and consisted of 14 or 15 tiers of four or five boats abreast, the Leonard being the outer port boat in the third hind tier. The Austin, with tow, was bound up the river. The collision occurred at daybreak, a short distance below Coxsackie, close to the eastern bank of the river. The tide was flood. A strong wind was blowing from the west.

The libel charged the Austin with fault in not keeping a proper lookout, in proceeding at a dangerous rate of speed, in not stopping and backing in time to avoid the collision, in not giving any signals and in being on the wrong side of the channel.

The claimant of the Austin brought in the McDonald by petition, alleging that she was in fault for not having a proper lookout, in not keeping the Leonard away from the easterly side of the river and in not having a helper tug on the leeward side of the tow to keep it straight.

The claimant of the McDonald, answering the petition, admitted the collision but denied that there was any fault upon the part of the McDonald and alleged that the Austin was in fault in the respects charged by the libellant.

The testimony shows that the channel at the place of collision was from 500 to 600 feet wide. Before reaching this point, the tow, in following the channel, had passed a bend in the river which gave it a heading to the eastward, and caused the tide to strike the starboard side of the tow, setting it, in connection with the strong westerly wind, over to the eastward. After the bend was turned and a comparatively straight place in the river reached, the tail of the tow, on account of the tow's extreme length, remained on the easterly side and at the place of collision was within a few feet of the wharves on that side while the tug was on the westward side of the channel. It was usual for tows coming down the river to keep over to the westward of the channel, in conformity with legal requirements, and the pilot of the Austin when he first saw the tow, supposing it to be of ordinary length and that there would be room for his boats to pass to the eastward, kept going until it became apparent that the tail of the tow was so near the eastern shore that a collision was imminent, when he endeavored to avoid it by stopping and reversing, but as the tow occupied practically all of the channel, the collision could not be avoided. Those on the McDonald were not aware that the collision had occurred until some time afterwards when it became necessary to care for the Leonard.

The McDonald was in fault for the collision in failing to properly manage her tow so as to avoid danger to other craft, which were entitled to navigate the river without being imperiled by the McDonald's usurpation of all of the channel. She had two helpers, one alongside of herself and one which, when not engaged in picking up boats for the tow, was assisting to tow and at the time of this collision was on the starboard side of the tow about the third tier. There was no tug aft to keep the tow as straight behind the McDonald as the channel of

the river would permit and the tow was allowed to sweep along the eastern shore without any regard to other vessels which might be there. Under the circumstances, it was the McDonald's clear duty to see that a helper was sent to the "rear of the flotilla to assist in keeping the end of the tow in line." The Richmond, 63 Fed. 1020, 1022, 12 C. C. A. 1.

I find no fault upon the part of the Austin. She was on the right side of the channel and the only way she could have avoided the collision was by waiting below until the tow passed and it is urged on the part of the McDonald that she should have done so, citing: Scots Grays v. Santiago de Cuba (D. C.) 5 Fed. 369; Id. (C. C.) 19 Fed. 213; The Marshal (D. C.) 12 Fed. 921. These cases were decided in conformity with The Galatea, 92 U. S. 446, 23 L. Ed. 727. It was there held that where in order to avoid a collision, it was necessary for one of two colliding vessels to stop, it was the duty of that one to do so which was proceeding against the tide, as her movements could be controlled with less difficulty than those of the other vessel. The doctrine evidently has no application against the Austin, as she was going with the tide. The evidence shows that those on the Austin proceeded upon a reasonable expectation of finding necessary space to pass to the eastward of the McDonald's tow and were disappointed because of its extraordinary length. Moreover, the fault of the McDonald sufficiently accounts for the collision without resorting to a possible delinquency on the part of the Austin.

Decree for the libellant against the McDonald, with an order of reference. The libel is dismissed as to the Austin.