### THE TUNGUS.

(Circuit Court of Appeals, Second Circuit. January 5, 1925.)

#### No. 114.

Collision ⚙︎�longdash72(1)—Collision between vessels riding on anchors during strong wind held due to fault of both vessels.

    Collision between vessels riding on anchors in harbor during strong wind, on failure of one vessel to drop second anchor or get up steam until about time of collision, and failure of other vessel to pay out more than five fathoms of chain when danger of collision became imminent, *held* due to fault of both vessels.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by the Wilhelmsen's Dampskibs Aktieselskabet, owner, of the steamship Tungus, against the United States. Decree for half damages, and libelant appeals. Affirmed.

Haight, Smith, Griffin & Deming, of New York City (Henry M. Hewitt, of New York City, of counsel), for libelant.

William Hayward, U. S. Atty., of New York City (Ralph B. Romaine, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The appellant's steamship Tungus on November 15, 1919, anchored in the harbor on the Red Hook flats in a northwestern position from the appellee's vessel, the Westerner, which distance it deemed safe. Both vessels were light, without cargo, and were riding on their anchors for four days swinging with the tides and with no unusual occurrence. On the 19th, a northwestern gale blew, the wind averaging a velocity of over 40 miles an hour. The Tungus was riding on her port anchor and dropped a starboard anchor, let out more chain in the port anchor so that there were 50 fathoms of port chain and 25 fathoms of starboard chain. The Westerner was riding on her port anchor, but did not let out more chain or let out a second anchor during this gale. Another steamer, the Henry Clay, was to the southeast of the Tungus. The barometer was falling rapidly on the 19th, which indicated worse weather to come. The Westerner had steam in her donkey boiler and had a reserve of 45 fathoms of chain on her port anchor, but took no precautions whatever to avoid the contact which subsequently occurred. The officer in charge neither dropped a second anchor nor got up steam until about the time of the collision. The only barometer on the ship was inaccessible, as it was locked in the cabin of the captain, who was ashore. At about 3:15, the watchman, who was the only person on deck, called the second officer of the Westerner and advised him the Westerner was drifting dangerously close to the Tungus. The second officer immediately ordered steam. What occurred thereafter is in dispute, but we think the evidence warrants the following findings: · That the Westerner again swung close but cleared the bow of the Tungus; thereupon the Tungus paid out five fathoms more of chain, but the Westerner, in her swing, swung again, and either struck the port chain or stem of the Tungus. No further chain was paid out by the Tungus, and the officer in charge said he did not do so because the Henry Clay lay under his stern. Thereupon the Westerner hove in on her chain dragging down past the Tungus and the Henry Clay to a berth where she lay until 8 a. m. At that hour, the wind became stronger, and she dragged against the piers at Sixty-Fifth street, South Brooklyn, more than a quarter of a mile distant. The Tungus' stem was found to be bent slightly to port and her starboard rail was broken a short distance abaft her stem by the overhanging of the Westerner. We think the Westerner did strike the Tungus, and we re-

solve this question of fact in favor of the claim of the appellant.

This was not a case of extraordinary risk. The Sapphire, 11 Wall. 164, 20 L. Ed. 127; The Ciudad de Reus (C. C. A.) 185 F. 391; Riley v. The Richmond (D. C.) 56 F. 619, affirmed 63 F. 1020, 12 C. C. A. 1. The Tungus knew or should have known that by veering chain a collision could have been avoided, and this could have been done by one seaman. Indeed, when danger was somewhat remote, this was done, by veering 20 fathoms on one chain and holding on to the other. When danger became inevitable, only 5 fathoms were paid out. At that time the distance of the Henry Clay astern would have justified paying out at least 40 fathoms. We think the testimony warrants these conclusions. The Westerner was at fault, but the Tungus could not depend solely upon her to have avoided a collision. She did not use the means at hand and which were possible for avoiding such collision. The point of danger of the contact was slow but steady and gave ample time for due consideration and caution. Both vessels were at fault.

The decree below is affirmed.