**CUYAMEL FRUIT CO. et al. v. NEDLAND et al.**

**THE OMOA.**

Circuit Court of Appeals, Fifth Circuit.
May 20, 1927.

No. 4953.

1. **Admiralty** ⬅103—Decree denying libeled vessel's claim against third vessel and referring to commissioner amount of libelant's damages held not final as to third vessel's liability.

Decree that libelant should recover damages against vessel libeled, that damages claimed by latter from third vessel or its owner should be denied, and that matter should be referred to commissioner to ascertain amount of damages, *held* not final, so as to preclude review of ruling on question of third vessel's liability because of failure to appeal therefrom within time allowed; decree not so disposing of whole case as to be appealable.

2. **Collision** ⬅71(3)—Steamship colliding with another, which collided with third steamer, held at fault in using only one anchor.

Capacity laden steamship, which dragged anchor and drifted into collision with another steamship, breaking loose latter's anchor chain and causing her to collide with third steamship, also anchored near by, *held* at fault in using only one anchor while river was at flood stage, eight or nine vessels were anchored astern, and other vessels were likely to be seeking anchorage during night.

3. **Collision** ⬅71(3)—Anchored steamer, colliding with another after collision with third steamer, held at fault in not having aboard persons able to handle anchor windlass.

Steamship headed upstream without enough chain out to hold her against current when

struck by another steamer, breaking starboard anchor chain, *held* at fault for ensuing collision with third vessel, anchored short distance downstream, in not having aboard persons able to handle anchor windlass and slacken port anchor chain.

**4. Collision ⚖=77—Anchored vessel's situation may require competent anchor watch, though danger of collision is created by another vessel's fault.**

Situation of anchored vessel may be such as to subject her to duty of maintaining competent anchor watch, ready to give her chain and sheer her clear of approaching vessel, or adopt other suitable measures to avoid threatened collision, though danger was created through other vessel's fault.

**5. Collision ⚖=144—Vessel colliding with another, and latter colliding with third vessel, being both at fault, all damages should be equally divided between them.**

Steamship breaking anchor chain of another steamship, and latter vessel, colliding with third steamship as result, being both at fault, the former in using only one anchor and the latter in not having on board persons able to handle anchor windlass and slacken anchor chains, damages, including those sustained by second vessel, should be equally divided between them.

**6. Collision ⚖=136—Lost profits or use pending repairs after collision are allowable only if actually or reasonably supposed lost, and amount proved with reasonable certainty.**

Demurrage or damages for loss of profits or use of vessel during repairs arising from collision are allowable only if profits have, or may reasonably be supposed to have, been lost, and amount thereof is proved with reasonable certainty.

**7. Collision ⚖=136—Refusal to charter vessel for amount offered during repairs after collision held to preclude allowance thereof for demurrage.**

Evidence that owner of vessel refused to charter her on terms offered during period of her detention for repairs necessitated by collision *held* to preclude allowance of amount offered for demurrage.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Benjamin C. Dawkins and Louis H. Burns, Judges.

Libel by Sigvard-Nedland, master of the Steamship Stavangaren, against the steamship Omoa, whose owner, the Cuyamel Fruit Company, impleaded the United States as owner of the steamship Kewanee. From a decree for libelant against the Omoa and her sureties, they and the Fruit Company appeal. Modified, affirmed, as modified, and remanded.

Geo. H. Terriberry and Walter Carroll, both of New Orleans, La. (Terriberry, Young, Rault & Carroll, of New Orleans, La., on the brief), for appellants.

John D. Grace, M. A. Grace, Edwin H. Grace, and Edouard F. Henriques, Sp. Asst. in Admiralty to U. S. Atty., all of New Orleans, La., for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. About 2:30 o'clock in the morning of April 13, 1922, the steamship Kewanee, owned by the United States of America, and then loaded to capacity, anchored in the Mississippi river below Algiers Point, about 400 feet from the west bank, opposite New Orleans, being, when she straightened out on her anchor, about 75 to 100 feet upstream from the steamship Omoa, which had no cargo aboard, and had been anchored where she then was since February 14, 1922. About 3 o'clock that morning another vessel, the Chicago Maru, came up and anchored between 200 and 250 feet outside the Kewanee, the stern of the Chicago Maru when she was anchored being about amidship of the Kewanee. A few minutes after the Chicago Maru anchored, the Kewanee sheered, dragged her anchor, and drifted until she collided with the Omoa, breaking loose the latter's anchor chain and setting her adrift, with the result that the Omoa collided with the steamship Stavangaren, which was anchored a short distance downstream, and after such collision continued to drift downstream until she was taken in tow by tugs and brought back up the river to a wharf at New Orleans.

The master of the Stavangaren libeled the Omoa for recovery of damages to the former. The owner of the Omoa answered the libel, denying liability, and impleaded the United States of America as owner of the Kewanee. The impleading petition charged that the drifting of the Omoa and damage thereto, and the Omoa's collision with the Stavangaren and the resulting damage to the last-named vessel, were due wholly to alleged faults chargeable against the Kewanee, and prayed an award in favor of the owner of the Omoa against the owner of the Kewanee for damages sustained by the Omoa, and that, in the event of the court decreeing anything to be due to the original libelant by the Omoa or her owner, the same amount be decreed in favor of the owner of the Omoa against the United States. The owner of the Omoa, by its answer to the original libel, put in issue the allegations as to damages sustained by the Stavangaren, and the owner

of the Kewanee by its answer to the impleading petition put in issue the allegations as to damages sustained by the Omoa and the Stavangaren.

After evidence for all parties had been adduced before a commissioner and submitted to the presiding judge, he delivered an opinion on October 1, 1924, and a decree signed by him was filed on the same date. That opinion expressed the conclusions that the Omoa was chargeable with fault in being anchored with only one anchor when the river was at flood stage, and at a point where all vessels arriving at night were required to stop and remain until daylight, and in being left at night with no one aboard, except two Jamaican negroes, who were incapable of handling her when necessity arose; that the Kewanee was at fault in putting out only one anchor, when the high stage of the river, the swift current, and the local restrictions on her movements showed that additional precautions were required; and that the Stavangaren should recover her damages against the Omoa, and that those claimed by the Omoa of the Kewanee, or the United States, should be denied. The decree mentioned, after a recital of the submission of the cause, continued and concluded as follows:

"Whereupon, and on consideration thereof and for the reasons assigned in the written opinion of the court on file, the court finds that in this case the Stavangaren should recover her damages against the Omoa and those claimed by the latter of the Kewanee, or the United States, should be denied, and it is so ordered.

"It is further ordered that this matter be now referred to Reginald H. Carter, Esq., as commissioner, who is directed to ascertain the amount of damages suffered by the Stavangaren and to report the same back to this court in due season, all according to law and the usual forms and practices of this court."

Following the making of a report by the commissioner named in the above-mentioned decree, the court, on August 18, 1926, rendered a decree which awarded in favor of the original libelant and against the Omoa and her sureties damages, which included an award for demurrage for 9½ days on the basis of $5,000 per month, less expenses. The owner of the Omoa appealed from that decree on the day it was rendered. In behalf of the appellant it was contended that the Omoa was not chargeable with fault; that

the Kewanee was solely at fault, and liable for the damages both to the Stavangaren and the Omoa; that, if the Omoa was chargeable with fault, the Kewanee being also chargeable with fault which was a contributing cause of the injury to the Stavangaren, the damages should be divided between the Kewanee and the Omoa; and that the Stavangaren's claim for demurrage should be rejected.

[1] The owner of the Kewanee moved to dismiss the appeal. In its behalf it was contended that the above-mentioned decree of July 1, 1924, was final so far as the case concerned the Kewanee or her owner, and that the right to review the court's ruling on the question of the asserted liability of the Kewanee was lost by the failure to appeal from that decree within the time allowed. The language of that decree shows that it was not final, but interlocutory only. Obviously it did not dispose of the whole case, or even all the issues between the owner of the Omoa and the owner of the Kewanee. It did not dispose of the issues as to damages alleged to have been sustained by the Omoa and the Stavangaren, no award of damages being made against the Omoa; the matter of making such an award being left to be determined after the production of additional evidence and the making of a report by the commissioner named. It did not adjudicate on the claim asserted by the owner of the Omoa that the Kewanee or her owner was liable for damages sustained by the Stavangaren, and did not order the dismissal of the suit so far as it involved claims against the Kewanee. Plainly that decree did not so dispose of the whole case as to be subject to be appealed from. Rexford v. Brunswick-Balke-Collender Co., 228 U. S. 339, 31 S. Ct. 469, 55 L. Ed. 346. The motion to dismiss the appeal is overruled.

[2] We concur in the court's conclusions that both the Kewanee and the Omoa were at fault. At the time of the occurrences in question the Mississippi river was at flood stage, being unusually high, with strong currents, which were sometimes shifted by movements of vessels, resulting in eddies and "boils," making the handling and control of vessels, including those anchored, exceptionally difficult. There were many vessels in the vicinity of the Kewanee when she anchored; her master stating that there were eight or nine astern of her at that time. The waters in that locality were liable to be additionally disturbed at any time during the night by

the movement of vessels seeking places of anchorage until after daylight. The circumstances attending the anchoring of the Kewanee, loaded to capacity as she was, called for special precautions to avoid endangering herself and other vessels in her vicinity.

The use of only one anchor to hold her, when it was practicable, by the use of an additional anchor, more effectively to insure the accomplishment of that result, indicated a lack of due appreciation of the situation dealt with and of the perils involved in a failure to use effective means of keeping her at a safe distance from other vessels. The insufficiency of the means adopted for holding the Kewanee, which were the same as might have been appropriate under the most favorable conditions, was demonstrated very soon after she was anchored by her sheering and drifting, when there had been no change in conditions which was not reasonably to have been anticipated. We think the evidence showed that the Kewanee was at fault in failing to take such precautions as attending circumstances indicated were necessary for the safety of herself and other vessels in her vicinity.

[3, 4] The Omoa, headed upstream, was held by only one anchor. Her port anchor was in the water, but, not having out enough chain to be of any assistance in holding the vessel against the current, the only purpose it served or was intended to serve being to keep the vessel from sheering or being swung out into the river by the wind or the current. While the vessel was anchored within an area which was assigned for use as an anchorage ground; it was where other vessels were frequently passing, especially at night, as, because of flood conditions, vessels bound for New Orleans, when approaching that port at night, then were required by the New Orleans port authorities to anchor and wait for daylight before going to a dock. The unusual conditions prevailing in the river at that time made the handling of all vessels subject to special difficulties, with the result of increasing the hazards to themselves and to other vessels in their vicinity.

The Omoa was subject to be endangered as a result of an error in judgment in the handling of another vessel near by under the difficult conditions created by high waters and strong currents, and the constant movements of vessels within the area used for anchoring. In such circumstances she was left at night with only two persons aboard, one employed as a watchman at night, and the other as day watchman. The evidence showed that no services were expected of either of those men, except to guard against fire and thieves, to see that the Omoa's lights were burning properly at night, and to ring the bell in foggy weather. They did not know how to slacken the anchor chains, and were forbidden to touch the anchor windlass.

The situation of an anchored vessel may be such as to subject her to the duty of maintaining a competent anchor watch, ready to give her chain and sheer her clear of an approaching vessel, or to adopt other suitable measures to avoid a threatened collision, though the danger was created by the fault of the other vessel. The Sapphire, 11 Wall. 164, 20 L. Ed. 127; Shepherd v. The Clara, 102 U. S. 200, 26 L. Ed. 145; The Richmond (C. C. A.) 63 F. 1020; Wells v. Armstrong (D. C.) 29 F. 216; The Anerly (D. C.) 58 F. 794; The Director (D. C.) 180 F. 606. We think the evidence showed that the Omoa was chargeable with fault for failing to take precautions commensurate with the known perils to which she and other vessels in her vicinity were exposed. The evidence affords ground for inferring that, if she had had aboard one or more persons capable of handling an anchor windlass and authorized to do so, the breaking of the starboard anchor chain could have been avoided by slacking it when the approach of the Kewanee was discovered, and that the collision with the Stavangaren could have been avoided by promptly paying out the Omoa's port anchor chain after the breaking of the anchor chain which had been holding her.

[5] It is to be inferred from the evidence that the collision between the Omoa and the Stavangaren would not have occurred, if the Kewanee had not broken the anchor chain which was holding the Omoa. Faults chargeable against both the Kewanee and the Omoa were contributing proximate causes of the damages sustained by the Stavangaren; which is not claimed to be chargeable with any fault. Both the Kewanee and the Omoa being at fault, the damages should be equally divided between them, including those sustained by the Omoa. The North Star, 106 U. S. 17, 1 S. Ct. 41, 27 L. Ed. 91; 7 Cyc. 378.

[6, 7] As above stated, the collision with the Stavangaren occurred on April 13, 1922. At that time she was not employed, but was ready for service, and her owner desired to charter her. On April 12 an offer was made to her owner to charter her at $5,000 a month

or $6,500 a month for 6 months. On April 13 her owner declined that offer and made a counter offer to charter her for $7,800 a month for 6 months or $6,500 a month for 12 months. That counter offer was declined and the original offer was repeated on April 13th. A cable from her owner, dated April 17th, repeated its previously made counter offer. No evidence adduced tended to prove that during the time the Stavangaren was detained pending the repairs required by the collision she could have been chartered at a price which her owner was willing to accept.

Demurrage or damages for the loss of profits or of the use of a vessel pending repairs, arising from a collision, are allowable only when profits have actually been, or may reasonably be supposed to have been, lost, and the amount of such profits is proved with reasonable certainty. The Conqueror, 166 U. S. 110, 17 S. Ct. 510, 41 L. Ed. 937; The Wolsum (C. C. A.) 14 F.(2d) 371. It is apparent that the Stavangaren, being unemployed when she was injured by the collision, was earning nothing at that time, and would not have earned anything during the succeeding 9½ days, unless during that time she had an opportunity to be employed on terms acceptable to her owner. The evidence showing that during that time she could have been chartered at $5,000 a month, accompanied, as it was, by evidence showing that during that time her owner refused to charter her on those terms, furnished no support for a finding that, but for the collision, she would during that time have been under charter at the rate of $5,000 a month and earning profits for her owner.

The evidence adduced was not such as to warrant a finding that the collision and detention for repairs caused the Stavangaren to lose an opportunity for profitable employment, which her owner would have accepted if the collision and detention had not occurred. Certainly her owner did not sustain recoverable damages by being deprived of the opportunity to charter the vessel on terms which it would not have accepted during the period of detention for repairs, if the collision had not occurred. We conclude that the court erred in allowing the above-mentioned item for demurrage.

The decree appealed from is modified, as indicated in this opinion, and, as so modified, is affirmed, and the cause is remanded for further proceedings not inconsistent with this opinion; costs of this appeal to be taxed against appellees.

Modified and affirmed, and remanded.