## THE EAST INDIAN.

### THE EUREKA.
### No. 93.

Circuit Court of Appeals, Second Circuit.
Dec. 19, 1932.

Harry D. Thirkield, of New York City, for appellant Hirsch Lumber Co.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and Eugene Underwood, both of New York City, of counsel), for appellees Ford Motor Co. and the East Indian.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for respondent New York & Albany Lighterage Co.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

On November 16, 1927, the East Indian, a twin screw motorship, lay on the south side of a pier in Brooklyn, bow in the slip, port side to the pier. It displayed signs, targets, and booms carried by twin screw vessels which gave warning that it had two propellers. The lighter Eureka made fast alongside the East Indian to receive a cargo of lumber for the appellant, Hirsch Lumber Company, on the previous day and lay alongside of the starboard side of the East Indian. The Eureka was made fast by four lines, two forward and two aft, and headed out of the slip, her bow toward the stern of the East Indian. The captain of the lighter went ashore for breakfast at 6:40 A. M. At 7 o'clock, two gangs of stevedores, employed by the Harbor Contracting Company, Inc., an independent contractor, boarded the East Indian and began to discharge the lumber from hold No. 2. When the captain returned an hour and a half later, he found the two stern lines of the Eureka had been cast off and she had begun to drift, pivoting on her bow lines which led to the East Indian starboard side aft. At that time the stevedores were working hatches 2 and 3, and were shifting about to the deep tank and hatch 4. The stevedores were in charge of the unloading of the ship. The East Indian's officers and crew were not assisting in the discharging or the handling of the lighter. The barge captain waited an hour and a half while the Eureka drifted, and did nothing until she had swung around against the East Indian's starboard propeller and a New England lighter which lay astern of the East Indian. He then boarded the Eureka and rigged a whip to the windlass on the New England lighter and attempted to move the Eureka, but was unsuccessful. It was then known that the Eureka was on the East Indian's propeller, and the barge captain went on board and asked for assistance. The chief engineer had the starboard propeller jacked over by the jacking gear and the Eureka was released. However, damage was done to the port side and bottom of the Eureka and to two of the four blades of the East Indian's starboard propeller, and to the cargo. This gave rise to these four suits, which have been consolidated.

It was found below that the Eureka swung around through an arc of 180° under the overhang of the East Indian and fetched up on the starboard propeller. The propeller is 5 or 6 feet inboard under the counter. It is claimed that the lines were unfastened by employees of the stevedore.

This court held that a lighter must keep from under the overhang of a twin screw vessel, and is at fault for resulting damage if she swings under the counter and fouls the propeller. The Teno, 47 F.(2d) 197 (C. C. A. 2). In the Teno Case, there was damage also to the cargo which was dumped. We held the lighter and stevedores jointly liable. There is no claim here that the lighter's captain did not have knowledge that the East Indian was a twin screw vessel. The Eureka was in the position of a drifting vessel when the lines were unfastened, and she had been so for at least an hour and a half. The Buffalo, 56 F.(2d) 738 (C. C. A. 2). This gives rise to a presumption that the Eureka was at fault. The P. R. R. No. 216, 56 F.(2d) 604 (C. C. A. 2). In the last case the barge captain left his vessel in the afternoon while she was properly made fast outside of another

vessel. On the following afternoon, she drifted into collision with a third vessel causing damage. It was shown that the vessel against which she was made fast had left, and that when the collision occurred, all the lines of the No. 216 were gone. It was contended for the No. 216 that the proofs met the presumptions because they demonstrated either that she was cast off by the vessel alongside of her when the latter sailed or by thieves who stole her lines. This court held that such proofs did not meet the presumption of fault, and she was held solely at fault for the collision. In the instant case, the barge captain knew or should have known that the stevedores resumed work at 7 A. M. and that it would be necessary to shift the Eureka in order to facilitate the loading. Under these circumstances, he was clearly at fault in not providing attention and protection to the lighter after 7 A. M. in the event of a shift by the stevedores. See The No. C–4 (D. C.) 300 F. 757; The Edmund Moran, 180 F. 700 (C. C. A. 2).

■■ Moreover, the Eureka's owners cannot be exculpated because the lines were cast off by the stevedores during the absence of the lighter's captain, if such was the case, because there was ample time and opportunity for the captain after his return to have obtained assistance and prevented the Eureka from drifting over on the propeller. He did nothing to stop the lighter's drift, and, while on board the New England lighter, waited until the Eureka swung around and fetched up against the propeller. This, the testimony shows, took an hour and a half. There were tugs in the slip which might have come to his assistance upon call. The presumption of fault of the Eureka, established from the fact that she was a drifting vessel, was not met by the testimony of her barge captain. She was blameworthy for the damage to the cargo. She was also responsible, at least in part, for the damage to the propeller.

■ But it is argued by the appellant Hirsch Lumber Company that the Ford Motor Company is liable for the stevedore's negligence. When the unloading took place, the Ford Motor Company had completed its contract of carriage. The stevedores were independent contractors, and their negligence consisted in loosening the lines to move the lighter and failing to make fast the lines subsequently. This was not the duty of the East Indian. The bill of lading provided:

"* * * The vessel may deliver at ship's tackle at port of discharge, at any point within the confines of the port, at which time carrier's obligations shall have been fully performed * * * If carrier requires delivery to be made to lighters, the consignee or cargo owner shall furnish at his or their expense, lighters, barges or other craft at ship's tackle so as to be ready to receive the merchandise when the steamer is ready to discharge * * * If the consignee or owner of the goods requests several lots stowed in different parts of the ship to be loaded on one lighter, any shifting of the lighter for this purpose shall be for his or their account. * * * *"

The shift to facilitate the stevedores, if at that time they cast off the lines, was not the act of the East Indian, and she is therefore not liable for damage to the cargo or to the Eureka. The Eureka is solely liable to the cargo owner, as are the stevedores. The No. 34, 25 F.(2d) 602 (C. C. A. 2); The Montserrat (D. C.) 7 F.(2d) 477, affirmed 15 F. (2d) 1015 (C. C. A. 2).

■ The propeller of the East Indian was damaged, and it may not be said that, because she failed to protect herself, she may not recover the damages so sustained. With the Eureka drifting, with lines unfastened for an hour and a half, there was a duty imposed upon the East Indian's lookout to exercise diligence and to see the situation, and this would have indicated the need of protection against the possibility of the Eureka drifting upon the propeller. Since the East Indian makes claim against the Eureka for the damage to its propeller, the damages to be awarded must be measured with this fact considered. We think that the Eureka is responsible for the damage to the propeller, but the East Indian may only recover half damages, in view of its failure to exercise reasonable diligence for its own protection. The Sapphire, 11 Wall. 164, 171, 20 L. Ed. 127. The officers in charge of the East Indian should have seen the danger of an impending collision. An officer should have readily seen and understood the danger.

The decree will be modified allowing (a) recovery to the appellant Hirsch Lumber Company for damages to its cargo against the Eureka and its owners; (b) half damages to the ship East Indian against the Eureka and its owners; (c) dismissing the claim of the Hirsch Lumber Company against the motorship East Indian as well as the Eureka's claim against the East Indian.

The recovery below against the Harbor Contracting Company is not appealed from, but remains undisturbed.

Decree modified.