SEGRAVE TRANSP. CO., Inc. v. ESKAY COAL & FUEL CO., Inc.

No. 240, Docket 22657.

United States Court of Appeals
Second Circuit.

Argued May 8, 1953.

Decided June 16, 1953.

Gerald J. McKernan, New York City, Macklin, Speer, Hanan & McKernan, New York City (James N. Allan, New York City, of counsel), for Etco Lighterage Corp.

Selig Kaplan, Brooklyn, N. Y., for Eskay Coal & Fuel Co., Inc.

James D. Brown, New York City, Purrington & McConnell, New York City (Frank J. McConnell, New York City, of counsel), for Lloyd Brasileiro.

Henry C. Eidenbach, New York City, Hagen & Eidenbach, New York City (Richard A. Hagen, New York City, of counsel), for the libelant.

Before L. HAND, CHASE and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The libelant, which owns the barge, Elliott, sued the Eskay Coal & Fuel Co. Inc. to which it had chartered the barge for damage done to her in the slip between Piers 7 and 8 of the Bush Terminal, Brooklyn. This damage was caused because on October 11, 1946, the Elliott and the lighter, Terbell, owned by the Etco Lighterage Corporation, were left alongside each other in the slip upon an ebb tide, with less than five feet between them. That would have done no damage to either, save for the fact that the bottom of the slip was not flat, but rose towards the pier on either side; so that as the tide fell, each listed towards the other and the Elliott was squeezed between Pier 8 and the side of the Terbell. (There is some dispute as to which vessel came into the slip first; but Judge Inch did not decide the point, and we do not think it necessary for us to do so either, as will appear.) The Elliott was made fast to the south side of Pier 8 opposite a movable crane that was used by the Eskay Company to discharge a cargo of coal that had been consigned to it. It was always possible to move her further out in the slip until she was pinned in her berth by the Terbell. The Terbell was made fast on the north side of Pier 7, lading a cargo of bagged "mandioca" meal. Doors 32 to 42 of the shed through which this meal was taken out, were opposite the crane on Pier 8, so that it was not safe at low water for the Terbell to be lading her meal and the Elliott to be discharging her coal. Those in control of both vessels well understood this; and Judge Inch found that when the Terbell was moved into position abreast of the Elliott, she gave the Elliott a foul berth and became primarily responsible for the damage. He also found that, since the Eskay Company could have moved the Elliott further out into the slip before she was pinched in by the Terbell, that company's failure to do so made it secondarily liable. He exonerated the Elliott *in rem* because he found that "it was physically impossible for the bargee to shift the barge alone."

■ According to the Terbell's bargee, the Eskay Company's men had that morning moved the lighter some twenty or thirty feet out from her position in order to put the Elliott in proper position for her continued discharge, and, when those in charge of loading the Terbell saw that this had been done, they moved her back to where she had been. Judge Inch made no finding as to this interference by the Eskay Company with the first position of the Terbell;

but he did find, as we have said, that the Etco Corporation had moved her so as to be alongside of the Elliott. We attach no legal importance to the supposed preliminary interference with the Terbell; and we agree with Judge Inch that the Terbell by moving alongside the Elliott gave her a foul berth and became liable for the ensuing damage. Further we accept his finding that the Elliott's bargee could not without the help of the Eskay Company have moved the barge out of the danger so resulting; and, finally, we agree that the Eskay Company was liable to the libellant for not moving the barge further out into the slip after the Terbell had been moved alongside, whether or not the Eskay Company had originally moved her away. On the other hand we do not agree that this fault imposed only a secondary liability upon the Eskay Company: we hold that it and the Etco Corporation became joint tortfeasors.

The situation, so far as concerned the liability of the Eskay Company, was closely like that in Lynch v. Agwilines Inc., 2 Cir., 184 F.2d 826, where we held a barge liable for allowing herself to be slowly pinned to a pier by a lighter that was herself made fast to a ship, moored to an opposite pier. The ship's lines slowly slackened with the ebb and the ship thus pushed the barge against the opposite pier, just as the tide listed the Elliott against the Terbell. We held that the tug that put the barge in so dangerous a position was justified in relying upon the bargee's noticing the slow approach of his barge to the pier; and we should so have held the Elliott here, were it not for the finding that her bargee was not able to move her. On the other hand it follows that as the Eskay Company, her charterer, was charged with a duty to protect her, it was liable for failing to move her out of danger. The case was apparently disposed of on the theory that, since the Etco Corporation was guilty of the first fault, the Eskay Company's later failure to extricate the barge was not a contributing factor to the damage, and imposed no further liability than, as charterer, the Eskay Company would have been under anyway. That seems to us erroneous, for it is a part of the law of torts that, where a person is under a duty to care for another's property, his negligent failure to avoid the consequences of another's earlier wrong makes him liable as a joint tortfeasor.[1] This principle has been recognized in the admiralty in a number of cases where a vessel has anchored too near another vessel that fails to move to a safe berth.[2] The fact that this duty is forced upon the second vessel by the initial wrong of the first, does not excuse the second, any more than at common law under the doctrine of the "last clear chance," the second comer is excused.[3] Therefore we hold that the Eskay Company was under a duty, regardless of the proceeding wrong of the Etco Corporation, to move the Elliott away from possible contact with the Terbell. The resulting liability is additional to its imputed liability as charterer; it is for the personal breach of its duty of care. It is no answer that in order to move the Elliott the Eskay Company would have been obliged to interrupt its use of her; for, although it may be that it could have recovered from the Etco Corporation whatever was its loss by being obliged to move the Elliott to a place of safety, that did not justify its failure to protect the barge.

We have disregarded the claim of the Etco Corporation against the Lloyd Brasileiro, for it is so obviously without foundation as to deserve no discussion.

The decree will be modified by holding the Etco Corporation and the Eskay Company jointly at fault and that each is liable to the libellant for half damages. Cost of this appeal to the Etco Corporation.

Decree modified as stated in the foregoing opinion.

1. Restatement of Torts § 452.

2. The Sapphire, 11 Wall. 164, 20 L.Ed. 127; The Ciudad de Reus, 2 Cir., 185 F. 391; The Baltimore, 1 Cir., 283 F. 728; The Tungus, 2 Cir., 5 F.2d 66; Cuyamel Fruit Co. v. Nedland, 5 Cir., 19 F.2d 489; The East Indian, 2 Cir., 62 F.2d 242.

3. Restatement of Torts § 479.